**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   AARON C. STEVENSON, et al.,              No. C-11-4950 MMC

12              Plaintiffs,                    **ORDER GRANTING IN PART AND**
         v.                                    **DENYING IN PART DEFENDANTS'**
13                                             **MOTION FOR SUMMARY JUDGMENT**
     THE CITY AND COUNTY OF SAN
14   FRANCISCO, et al.,

15              Defendants.
     _____/

16

17        Before the Court is the "Motion for Summary Judgment, or in the Alternative, Partial

18   Summary Judgment," filed August 7, 2015, by defendants City and County of San

19   Francisco, San Francisco Fire Department, San Francisco Fire Commission, and Civil

20   Service Commission of San Francisco (collectively, "the City").  Plaintiffs Aaron C.

21   Stevenson ("Stevenson"), Kevin D. Taylor ("Taylor"), Kevin W. Smith ("Smith"), Audry Lee

22   ("Lee") and Kirk W. Richardson ("Richardson") have filed opposition, to which the City has

23   replied.  Further, with leave of court, plaintiffs have filed a surreply.  Having read and

24   considered the papers filed in support of and in opposition to the motion, the Court deems

25   the matter suitable for decision thereon,[1] and rules as follows.

26   //

27

28        [1]The Court took the motion under submission as of December 18, 2015.  (See
     Order, filed December 10, 2015, at 3:12-13.)

**BACKGROUND**

Plaintiffs, each of whom is African-American and employed or formerly employed by the City in its Fire Department, challenge various employment decisions by the City as discriminatory or retaliatory.  On behalf of each said plaintiff, plaintiffs challenge the City's use of a particular examination that was given for the purpose of creating a list of persons eligible for promotion to the position of H-50 Assistant Chief, as well as the City's use of that list to promote persons other than plaintiffs.  Plaintiffs also challenge the City's decision not to promote Taylor and Smith to certain other positions.  Additionally, plaintiffs allege that Stevenson and Lee were constructively discharged, that Stevenson and Smith were improperly disciplined for rules violations or other conduct at the workplace, that Taylor and Smith were subjected to improper investigations into certain workplace activities, and that Smith was improperly denied a transfer and given a negative evaluation.  In each instance, plaintiffs allege that the challenged decisions by the City violated Title VII and the Fair Employment and Housing Act ("FEHA"), and, as to certain of the challenged acts, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 as well.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is

2

1   some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  "If the

2   [opposing party's] evidence is merely colorable, or is not significantly probative, summary

3   judgment may be granted." <u>Liberty Lobby</u>, 477 U.S. at 249-50 (citations omitted).

4   "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

5   most favorable to the party opposing the motion." <u>See</u> <u>Matsushita</u>, 475 U.S. at 587

6   (internal quotation and citation omitted).

7                                          **DISCUSSION**

8          The City argues it is entitled to summary judgment on each of plaintiffs' claims,

9   which claims, as stated above, are based on a number of allegedly adverse employment

10  acts.  The Court considers in turn each such act and, in particular, whether the City is

11  entitled to summary judgment on the claims alleged by plaintiffs with respect thereto.

12  **A.  H-50 Examination and Subsequent Failures to Promote**

13         Plaintiffs challenge the examination given by the City in 2010 for the position of H-50

14  Assistant Chief; plaintiffs also challenge the City's subsequent use of the results of that

15  examination to fill positions.

16         **1.  Facts**[2]

17         In 2009, the City decided to conduct an examination for the H-50 Assistant Chief

18  position in the Fire Department.  (<u>See</u> Hayes-White Decl. ¶ 6; Randle Decl. Ex. A at 44:13-

19  17.)  In connection therewith, the City first conducted a "job analysis" (<u>see</u> Randle Decl. Ex.

20  A at 46:16-18), in which the City used Art Kenney ("Assistant Chief Kenney"), "the only

21  incumbent permanent Assistant Chief," as the "Subject Matter Expert (SME)" (<u>see</u> Johnson

22  Decl. ¶ 11), after which the City's Department of Human Resources ("DHR") staff designed

23  the test in "consult[ation]" with Assistant Chief Kenney and with Patrick Gardner ("Deputy

24  Chief Gardner"), the Fire Department's Deputy Chief of Operations, who supervised the

25  Assistant Chiefs (<u>see</u> <u>id.</u> ¶¶ 5, 15-16).  The examination was given in 2010.  (<u>See</u> Hayes-

26  White Decl. ¶ 6.)  Twenty-three persons, including each plaintiff, took the examination.

27  ─────────────────────

28         [2]The facts set forth in this section, and all further factual statements, are either
    undisputed or stated in the light most favorable to plaintiffs.

(See Johnson Decl. ¶¶ 22, 35, Ex. G.)  At that time, Stevenson and Lee each held the position of H-50 Assistant Chief on a "provisional" or "acting" basis (see Hayes-White Decl. ¶¶ 4, 18; Stevenson Decl. ¶¶ 87-89), and the remaining three plaintiffs, Smith, Richardson, and Taylor, each held the position of H-40 Battalion Chief (see Smith Dec. ¶ 4; Richardson Decl. ¶ 4; Taylor Decl. ¶ 5).

The first component of the examination was given on August 8, 2010, specifically, the "fire scene simulation exercise" ("FSSE").  (See Randle Decl. Ex. D at 13, 18, 20.)  The candidates were given "four different scenarios," one of which, for example, was a "high rise scenario" (see id. Ex. D at 18); as to each scenario, the candidates were provided with certain "written and visual information," such as "photos of the fire building," and each scenario was presented to the candidate "via a recorded audio narration."  (See id.)  Each candidate "responded orally to the questions," the responses were "recorded via digital recorder" (see id.), and a "verbatim transcription of the candidate's verbal responses to the test questions" was prepared (see id. Ex. D at 24).  On October 30, 2010, the candidates took the second component of the examination, specifically, the "supervision and counseling exercise" ("S/PCE").  (See id. Ex. D at 13, 19-20.)  In the first step of that exercise, a "role-play," each candidate played the role of "an Assistant Chief, counseling a Battalion Chief,"[3] which role-play was "recorded using a video camcorder"; in the second step of the exercise, each candidate "document[ed] the meeting" in writing."  (See id. Ex. D at 19.)

For both exercises, a committee met to "develop the answer (aka scoring) key" (see id. Ex. D at 20), and the scoring keys developed were used during the rating process.[4]  The responses to the FSSE were rated by a team of two, each of whom first made an "independent assessment" after reviewing a "transcription of the candidate's verbal

---

[3]The "Battalion Chiefs" were "actors trained to perform the role."  (See id. Ex. D at 20.)

[4]The individuals who rated the responses to the FSSE and S/PCE were "Fire officers in the rank of Battalion Chief or higher from jurisdictions outside San Francisco."  (See id. Ex. D at 23.)

1  responses to the test questions," (<u>see</u> <u>id.</u> Ex. D at 23-24), after which the two raters "would

2  confer and reach [a] consensus on the assigned ratings" (<u>see</u> <u>id.</u> Ex. D at 24), and then

3  record the consensus score on a form (<u>see</u> Johnson Decl. ¶ 33).  The S/PCE raters

4  "evaluated the counseling session by viewing and listening to the video recording, and

5  evaluated the written documentation of the meeting."  (<u>See</u> <u>id.</u>)[5]

6      Thereafter, each candidate's score was calculated by the DHR, based on the

7  numbers set forth on the forms completed by the raters. (<u>See</u> <u>id.</u> ¶¶ 2, 35.)  Specifically, the

8  DHR "weighted" the "[r]aw scores" and then "converted" the raw scores "to a score on a

9  700-1000 point scale for presentation on [a] candidate eligible list."  (<u>See</u> <u>id.</u> ¶ 35.)  Lee

10  scored less than 700 and was not placed on the "eligible list."  (<u>See</u> <u>id.</u>)  The remaining 22

11  applicants, including Smith, Taylor, Richardson and Stevenson, were included on the

12  eligible list; Smith, Taylor, Richardson and Stevenson ranked, respectively, 13, 20, 21, and

13  22.  (<u>See</u> <u>id.</u> Ex. G.)

14      On December 20, 2010, the H-50 eligible list was "post[ed]" (<u>see</u> <u>id.</u> ¶ 41, Ex. G),

15  and was in effect until January 2015 (<u>see</u> Hayes-White Decl. ¶ 15).  During the period of

16  time when the list was in effect, the Fire Department was prohibited by "Civil Service Rules"

17  from filling an H-50 position other than by use of the list.  (<u>See</u> <u>id.</u> ¶ 17.)  In conformity

18  therewith, the Chief of the Fire Department, Joanne Hayes-White ("Chief Hayes-White")

19  announced that "effective January 21, 2011, H-50 provisional and acting assignments

20  [would] be rescinded" (<u>see</u> <u>id.</u> Ex. E), and that persons holding such assignments would

21  "revert" to the position they last held on a permanent basis, which, in the case of Stevenson

22  and Lee, was H-40 Battalion Chief (<u>see</u> <u>id.</u> ¶ 18).

23      On January 22, 2011, Stevenson and Lee retired.  (<u>See</u> Rolnick Decl. Ex. 6 at 58:2-

24  4, Ex. 8 at 217:20-24.)  Also, on January 22, 2011, Chief Hayes-White "assigned the first

25  four candidates on the H-50 list, David Franklin, Kevin Burke, Thomas Siragusa, and

26  Matthew McNaughton, to acting assignments as H-50 Assistant Chiefs" (<u>see</u> Hayes-White

27  ─────────────────

28      [5]Neither party cites any evidence addressing what other steps were taken by the
persons who rated the S/PCE.

1  Decl. ¶ 18), and those promotions became "permanent" on June 11, 2011 (see id. ¶ 19).  In

2  July 2011, Chief Hayes-White promoted Tom Siragusa to a different position, and then

3  "assign[ed] Michael Morris, the sixth ranked candidate on the list, as an acting H-50

4  Assistant Chief . . . . in place of Tom Siragusa."  (See id. ¶ 22.)[6]  Lastly, on September 7,

5  2011, Chief Hayes-White appointed Robert Postel, who ranked fifth on the eligible list, to a

6  "permanent civil service H-50 Assistant Chief's position."  (See id. ¶ 21.)  David Franklin,

7  Kevin Burke, Thomas Siragusa, Matthew McNaughton, Michael Morris and Robert Postel

8  are "Causasian."  (See Rolnick Decl. Ex. 21 at 10.)

9         **2.  Disparate Impact Claims: All Plaintiffs**

10        The Third and Fourth Causes of Action, in which plaintiffs allege, respectively,

11  violations of Title VII and FEHA, include a disparate impact claim based on the City's use of

12  the examination results to create the eligible list and the City's subsequent use of the

13  eligible list.

14            **a.  Timeliness:  Stevenson and Lee**

15        The City argues that Lee's disparate impact claims are untimely and that

16  Stevenson's disparate impact claims, to the extent based on challenges to the promotions,

17  likewise are untimely.

18        Title VII and FEHA claims are both subject to two separate statutes of limitations,

19  the first pertaining to when a charge must be submitted to the applicable administrative

20  agency, and the second pertaining to when, after the conclusion of the administrative

21  proceedings, the plaintiff must file a complaint.

22        As to the first limitations period, a Title VII claim is barred if the plaintiff does not

23  submit a charge to the Equal Employment Opportunity Commission ("EEOC") within 300

24  days of the act of alleged discrimination, see 42 U.S.C. § 2000e–5(e)(1), and a FEHA

25  claim is barred if the plaintiff does not submit a charge to the Department of Fair

26

27            [6]Michael Morris was employed as an H-50 Assistant Chief until January 2012, when

28  he was promoted to another position.  (See id.)  The parties do not state whether the H-50 position he vacated was thereafter filled by another individual.

Employment and Housing ("DFEH") within 365 days of the act of alleged discrimination, see Cal. Gov't Code § 12960(d).  As to the second limitations period, a Title VII claim is barred if the plaintiff does not file a complaint within ninety days of the date of the plaintiff's receipt from the EEOC of a "right-to-sue" letter, see Scholar v. Pacific Bell, 963 F.2d 264, 266-67 (9th Cir. 1992) (citing 42 U.S.C. § 2000e-5(f)(1)), and a FEHA claim is barred if the plaintiff does not file a complaint within one year of receiving a right-to-sue letter from the DFEH or within ninety days of receipt from the EEOC of a right-to-sue letter, whichever date is later, see Cal. Gov't Code § 12965(d)(2).

In determining whether a discrimination claim is timely, a court must first "identify[ ] precisely the unlawful employment practice of which [the plaintiff] complains."  See Lewis v. City of Chicago, 560 U.S. 205, 210-11 (2010) (internal quotation, alteration, and citation omitted).  Where, as here, a plaintiff asserts an examination has a disparate impact on a protected class, the plaintiff may challenge the employer's decision to use the results to create an eligibility list, see id. at 213-24, and/or may challenge the employer's "implement[ation] [of] that decision down the road," see id. at 214, i.e., the employer's "use of [the list] in selecting candidates," see id. at 213.

Here, the FAC alleges disparate impact claims based on both the City's adoption of the eligible list and the City's subsequent use thereof (see FAC ¶¶ 47, 51, 62, 151, 155), and plaintiffs, in their opposition, confirm that such claims are raised on behalf of all plaintiffs, including Lee and Stevenson (see Pls.' Opp. at 7:26 - 8:1).  Having identified the practices alleged by Lee and Stevenson as having a disparate impact, the Court next considers the City's argument that their disparate impact claims are barred by the applicable statutes of limitations.

### (1) Lee

Lee submitted two administrative charges, the first of which was submitted on January 3, 2011.  (See Randle Decl. Ex. N, Tab 2 at 1-2.)  In said charge, he asserted that, as "an African-American male," he was "discriminated against (disparate impact and

//

1   disparate treatment)"[7] because the FSSE component of the "promotional examination for

2   the rank of H-50 Assistant Chief" was "not representative of the duties of an H-50 Assistant

3   Chief" and the S/PCE component was "not job related."  (See id. Ex N, Tab 2 at 2.)  As no

4   promotions had been made as of the time the charge was submitted, the Court construes

5   the charge as asserting a claim based on the City's use of the examination results to create

6   the eligible list.

7       The City argues the claim asserted in Lee's first charge is barred, because, after he

8   received respective right-to-sue letters from the two agencies, he filed his Title VII and

9   FEHA claims after the applicable limitations periods had expired.  In support thereof, the

10  City correctly notes that Lee received a right-to-sue letter from the DFEH on January 19,

11  2011 (see Rolnick Decl. Ex. 8 at 216:7-9), and that he filed his Title VII and FEHA claims

12  on May 30, 2012.[8]  Consequently, a disparate impact claim based on the allegation in Lee's

13  first charge is time-barred if Lee received his right-to-sue letter from the EEOC more than

14  ninety days prior to May 30, 2012.  See 42 U.S.C. § 2000e-5(f)(1); Cal. Gov't Code

15  § 12965(d)(2).  As plaintiffs point out, however, the City offers no evidence to show when

16  Lee received a right-to-sue letter from the EEOC,[9] and, consequently, the City has failed to

17  meet its initial burden to show the disparate impact claim asserted in Lee's first charge is

18  time-barred.  See Payan v. Aramark Management Services Ltd. Partnership, 495 F.3d

19  1119, 1122-23 (9th Cir. 2007) (holding defendant seeking summary judgment on ground

20  plaintiff filed Title VII claim more than ninety days after receipt of right-to-sue letter "bears

21  the burden of proving that the plaintiff filed beyond the limitations period"; finding defendant

---

23  [7]Lee also asserted he was subjected to "age" discrimination.  (See id. Ex. N, Tab 2
24  at 1.)  In the instant action, Lee does not allege an age discrimination claim.

25  [8]The initial complaint was filed on October 6, 2011.  Lee, however, did not become a
    party until May 30, 2012, when plaintiffs filed their FAC.

26  [9]The City contends that Lee received a right-to-sue letter from the EEOC "in July
27  2011," and, to support such assertion, cites "Lee Depo. 216:7-19."  (See Defs.' Mot. at
    14:10-11.)  In the cited excerpt, however, Lee testified that he received a right-to-sue letter
28  from the DFEH dated January 19, 2011, but does not state when he received a right-to-sue
    letter from the EEOC.  (See Rolnick Decl. Ex. 8 at 216:7-19.)

1   met initial burden where, inter alia, it "offered proof of the right-to-sue letter," from which

2   "date of receipt" could be calculated).

3       In Lee's second charge, submitted on February 4, 2012 (see Randle Decl. Ex. N,

4   Tab 2 at 4), he asserted that, as an "African-American male," he was "discriminated against

5   (disparate impact and disparate treatment)" because the "H-50 Promotional Examination

6   [was] flawed, as it [was] neither valid, job related or reliable" (see id. Ex N, Tab 2 at 5); he

7   further stated that the "latest" challenged "discriminatory" practice occurred on September

8   7, 2011 (see id. Ex. N, Tab 2 at 4).  As September 7, 2011, is the last date on which Chief

9   Hayes-White used the list to promote an individual to an H-50 Assistant Chief position (see

10  Hayes-White Decl. ¶ 21), the Court construes the second claim as asserting disparate

11  impact claims based on the City's use of the list.

12      The City argues the disparate impact claim asserted in Lee's second charge is

13  untimely because the second charge was submitted to the EEOC and DFEH more than a

14  year after January 22, 2011, the date on which he retired.  Plaintiffs, however, do not allege

15  a disparate impact claim based on Lee's retirement, and, as plaintiffs point out, the City

16  fails to identify the relevance thereof.  Consequently, as the second charge was submitted

17  within 300 days of the first challenged promotion,[10] the Court finds the disparate impact

18  claim asserted in Lee's second charge is not barred by the statute of limitations.[11]

19                          **(2) Stevenson**

20      Stevenson submitted his first of two administrative charges on January 3, 2011,

21  //

22  //

23  //

24  _____

25      [10]The earliest promotion challenged by Lee, as well as by the other plaintiffs, occurred on May 17, 2011.  (See FAC ¶ 51.)

26      [11]Given that Lee retired prior to the date on which the earliest challenged promotion

27  occurred, it is not clear how the challenged promotions would constitute independent wrongs committed by the City against Lee.  As the City's argument is that Lee's disparate

28  impact claim is untimely, however, the Court does not further address herein such additional issue.

1    which submission the City does not argue was untimely.[12]

2         Stevenson submitted his second administrative charge on February 14, 2012.

3    Stevenson's second charge, like Lee's second charge, asserts that the H-50 examination

4    was "flawed, as it [was] neither valid, job related or reliable" (see Randle Decl. Ex N, Tab 3

5    at 7), and states the "latest" challenged "discriminatory" practice occurred on September 7,

6    2011 (see id. Ex. N, Tab 3 at 6), i.e., the date on which the last challenged promotion

7    occurred.  The City argues the second charge is untimely, as it was submitted more than

8    one year after January 22, 2011, the date on which Stevenson, like Lee, retired.  For the

9    reasons stated above with respect to Lee, the Court finds the City's argument

10   unpersuasive; specifically, the City has failed to show the relevance of Stevenson's

11   retirement date, and the second charge was submitted within 300 days of the first

12   challenged promotion.

13                          **b.  Merits:  All Plaintiffs**

14        To establish a racial discrimination claim under a disparate impact theory, the

15   plaintiff has the initial burden to "establish[ ] a prima facie violation by showing that an

16   employer use[d] a particular employment practice that cause[d] a disparate impact on the

17   basis of race," see Ricci v. DeStefano, 557 U.S. 557, 578 (2000) (internal quotation and

18   citation omitted); a prima facie case is, "essentially, a threshold showing of a significant

19   statistical disparity," see id. at 587.  If the plaintiff meets his initial burden, the employer

20   "may defend against liability by demonstrating that the practice is job related for the

21   position in question and consistent with business necessity."  See id. at 578 (internal

22   quotation and citation omitted).  Lastly, if the employer meets its burden, "a plaintiff may still

23   succeed by showing that the employer refuses to adopt an available alternative

24   _____

25        [12]In his first charge, Stevenson, like Lee, asserted that, as "an African-American
     male," he was "discriminated against (disparate impact and disparate treatment)" because
26   the FSSE component of the "promotional examination for the rank of H-50 Assistant Chief"
     was "not representative of the duties of an H-50 Assistant Chief" and the S/PCE component
27   was "not job related" (see Randle Decl. Ex N, Tab 3 at 1-2); Stevenson additionally
     asserted the "candidate's list was posted on December 20, 2010" (see id. Ex. N. Tab 3 at
28   3).  The Court construes Stevenson's first charge as asserting a claim based on the City's
     use of the examination results to create the eligible list.

employment practice that has less disparate impact and serves the employer's legitimate

needs."  See id.; see also Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 378 (2000) (holding

"California courts look to pertinent federal precedent when applying [FEHA]").

### (1) Significant Statistical Disparity

As set forth above, plaintiffs have the initial burden to show a "significant statistical

disparity."  See Ricci, 557 U.S. at 587.

The City, relying on its expert, Christopher Haan, Ph.D. ("Dr. Haan"), contends

plaintiffs cannot make the requisite showing.  In particular, Dr. Haan opines that "[t]here is

no statistical evidence to support the allegation that the [City] promoted White candidates to

H-50 Assistant Chief [positions] at a different rate than African-American candidates based

on the 2010 H-50 Assistant Chief promotional examination."  (See Rolnick Decl. Ex. 17 ¶

25.)  In their opposition, plaintiffs rely on their expert, Arthur Gutman, Ph.D. ("Dr. Gutman"),

who states, "[I]t is my opinion that with a high degree of scientific certainty, the promotion

test for the H-50 Assistant Chief position had an adverse impact on Black applicants."  (See

Randle Decl. Ex. 4 at 17.)  The primary reason for the experts' divergent opinions is that

the experts employed different testing methods.[13]  Dr. Haan used the "Fisher's Exact" test,

the results of which, he states, show no significant statistical disparity (see Rolnick Decl.

Ex. 18 at 14), while Dr. Gutman used the "Chi Square" test, the results of which, he states,

do show a significant statistical disparity (see Randle Decl. Ex. 4 at

14).[14]

---

[13]The discrepancy is also due in part to the experts' use of different variables.  In that regard, Dr. Haan's opinion is based on the assumption that the City promoted five individuals to H-50 positions, while Dr. Gutman's opinion is based on the City's having promoted six persons to H-50 positions; specifically, the two experts disagree as to whether the individual who was promoted to the H-50 position that became vacant in July 2011 should be counted.  Additionally, Dr. Haan's opinion is based on an assumption that four African-Americans were eligible for promotion, while Dr. Gutman assumes there were five African-Americans so eligible; specifically, the experts disagree as to whether plaintiff Lee should be included.

[14]Dr. Gutman also performed an analysis using the Fisher's Exact test, the results of which he acknowledged "fall[ ] just barely short" of showing a statistically significant disparity.  (See id.)

The Court finds a triable issue of fact exists as to whether the H-50 examination had a disparate impact on African-Americans.  Indeed, a triable issue is illustrated in Dr. Haan's rebuttal report, in which he acknowledges that the results of the Chi Square test show a significant statistical disparity, while the results of the Fisher's Exact test do not (see Rolnick Decl. Ex. 18 at 12), thus presenting a triable issue as to "[w]hich statistical method [is] the most reliable and accurate."  See Klein v. Secretary of Transportation, 807 F. Supp. 1517, 1522-24 (E.D. Wash. 1992) (observing that, where plaintiff's experts relied on results of "Chi Square test" to opine that employer's selection device had disparate impact on persons over age of fifty whereas defendant's expert relied on results of "Fisher's Exact Test" to opine that device had no such impact, triable issue was presented; concluding, after conducting bench trial, plaintiff established requisite impact).[15]

Accordingly, as the City has not shown plaintiffs are unable to establish the existence of a significant statistical disparity, the Court next considers whether the City has shown it is undisputed that the H-50 examination was valid and job-related.  See Ricci, 557 U.S. at 578; see also Albemarle Paper Co. v. Moody, 422 U.S. 405, 430-31 (1975) (discussing use of "validation studies" to determine whether "employment tests are job related").

### (2) Validation of Examination

Where an employer's use of a "selective device," such as an examination, causes a disparate impact on the basis of race, the burden shifts to the employer "to justify the challenged selection device as a business necessity by showing that it is significantly job-related," see Craig v. Los Angeles County, 626 F.2d 659, 662 (9th Cir. 1980), a process known as "validation," see id. (internal quotation and citation omitted).  "[T]he Equal Employment Opportunity Commission (EEOC) has issued guidelines defining minimum

---

[15]In its reply, the City, in a footnote, states that "[t]o the extent plaintiffs rely on Dr. Gutman's expert reports or testimony, the City objects to and moves to strike such evidence that is not supported by law, standards of practice in his field, or the facts of the case."  (See Defs.' Reply at 9:21-22.)  Such objection, if meant as a challenge to Dr. Gutman's use of the Chi Square test, is not sufficiently developed for the Court to meaningfully address herein.

1   standards for professionally acceptable validation studies," see Contreras v. City of Los

2   Angeles, 656 F.2d 1267, 1281 (9th Cir. 1981), including "content validity studies," see 29

3   C.F.R. § 1607.5A.  The "[t]echnical standards for content validity studies" require, inter alia,

4   "a job analysis which includes an analysis of the important work behavior(s) required for

5   successful performance and their relative importance," see 29 C.F.R. § 1607.14C(2), and a

6   "show[ing] that the behavior(s) demonstrated in the selection process are a representative

7   sample of the behavior(s) of the job in question," see 29 C.F.R. § 1607.14C(4); see also

8   Association of Mexican-American Educators ("AMAE") v. California, 231 F.3d 572, 585 n.8

9   (9th Cir. 2000) (noting "content validity studies" show whether content of test "approximates

10  the knowledge, skills, or abilities that an applicant will use on the job").

11      Here, the City's expert, Cristina Banks, Ph.D. ("Dr. Banks"), and plaintiffs' expert, Dr.

12  Gutman, offer differing opinions as to the content validity of the H-50 examination,

13  including, inter alia, (1) whether the job analysis performed by the City was adequate and

14  (2) whether the content of the FSSE component of the examination was representative of

15  the H-50 position.  As discussed below, the Court finds a triable issue of fact exists as to

16  those issues.[16]

17                          **(a)  Job Analysis**

18      The parties' respective experts disagree as to whether it was appropriate for the City

19  to rely on only one subject matter expert, Assistant Chief Kenney, when conducting the job

20  analysis.  In Dr. Gutman's opinion, "[a] minimum requirement for a suitable job analysis is

21  to have multiple independent raters" so that the ratings "can be examined for interrater

22  reliability" (see Randle Decl. Ex. 4 at 20), and, according to Dr. Gutman, a number of other

23  suitable raters were available (see id. Ex. 5 at 4, Ex. U at 167).  By contrast, Dr. Banks

24  opines that, although "having only one SME for a [j]ob [a]nalysis is not ideal in most

25  circumstances," the City's decision to use only Assistant Chief Kenney was "the most

26  reasonable option," as no other person had "sufficient expertise."  (See Rolnick Decl. Ex.

27  ─────────────

28      [16]In light of such finding, the Court does not consider herein whether the disparate impact claims are triable for additional reasons.

1  19 ¶¶ 20-21).

2      On the present record, the Court cannot conclude that, as a matter of law, Dr.

3  Banks' opinion must be accepted.  First, the City has failed to show that a trier of fact could

4  not find Deputy Chief Gardner, who supervised the Assistant Chiefs, was qualified to serve

5  as an SME, see, e.g., Ricci, 557 U.S. at 564, 587 (finding examinations for captain and

6  lieutenant positions in fire department were "job related" where, inter alia, consultant who

7  performed job analyses used "incumbent captains and lieutenants and their supervisors" as

8  SMEs), particularly given that, after the job analysis had been completed, Deputy Chief

9  Gardner "consulted with [DHR] staff during test development to ensure that the test

10  components were realistic simulations of the job" (see Johnson Decl. ¶ 16).  Second,

11  assuming Dr. Banks, contrary to Dr. Gutman, is correct that H-50 Assistant Chiefs

12  employed on a non-permanent basis would not be appropriate SMEs if they themselves

13  planned to take the examination, the City has failed to show that three H-50 Assistant

14  Chiefs employed on a non-permanent basis who had indicated they were not going to take

15  the examination, specifically, Johnny Lo, James Barden and Frank Cardinale, were

16  unavailable or unwilling to serve as SMEs.

17                          **(b) Linkage**

18      With respect to determining whether the FSSE component of the examination

19  measured the knowledge, skills and abilities the City had identified in the job analysis, a

20  process the parties refer to as "linkage" (see Defs.' Mot. at 25:22; Pls.' Opp. at 26:8), the

21  parties' respective experts disagree as to whether the manner in which the City conducted

22  its linkage analysis was appropriate.

23      After the FSSE component of the examination had been designed, David Johnson

24  ("Johnson"), a Manager in the DHR, and Michael Cerles ("Cerles"), an "analyst" in the DHR

25  (see Johnson Decl. ¶¶ 2, 12, 18), first "reviewed the knowledge area and ability clusters [in

26  the job analysis] to identify the approximate percentage of each cluster that [was] sampled

27  by a test component" (see id. Ex. B at 15), after which the two analysts' respective

28  percentages were "averaged" (see id.), and the averages were then used to determine the

14

1   "weight" given to the FSSE component of the examination.  (See id.)  In evaluating the

2   above-described procedure, the experts again disagree.

3       In Dr. Gutman's opinion, Johnson and Cerles "differed radically with respect to the

4   percentage of KSA [knowledge, skill and ability] clusters that were represented on the

5   [FSSE] simulations."  (See Randle Decl. Ex. 4 at 25.)  In that regard, Dr. Gutman

6   performed two separate statistical tests, the results of which, he opines, show "the

7   interrater reliability was extremely low."  (See id.)  Specifically, according to Dr. Gutman,

8   the results of a "t-test of independent means revealed that the ratings [given by Johnson

9   and Cerles] were significantly different ($t_{42df}$=3.18; p = .003)" and that "Cohen's Kappa,

10  which is a measure of interrater reliability where zero equals no agreement and 1.00 equals

11  perfect agreement, computed to .064, which is virtually no agreement."  (See id. Ex. 5 at

12  11.)  In Dr. Gutman's opinion, the "disparity by [the] two raters require[d] at least a third

13  rater, if not more, to gain an accurate representation of what the test is measuring."  (See

14  id.)  In the absence thereof, Dr. Gutman concludes, the City cannot show "that what the

15  test measured is job related."  (See id. Ex. 4 at 26.)

16      By contrast, Dr. Banks relies on what she states is "an alternative, commonly used

17  measure of inter-rater reliability, a Pearson Product Moment correlation," the results of

18  which, in Dr. Bank's opinion, show "a high and statistically-significant correlation for the

19  FSSE (r=.82 p<.001)."  (See Rolnick Decl. Ex. 20 at 11.)  Relying on those results, Dr.

20  Banks opines that "the test developers have reliable and valid ratings" (see id.), and,

21  consequently, that "the H-50 Exam is job related" (see id. Ex. 20 at 12).  The City, however,

22  fails to show, or even argue, that the measure of inter-rater reliability on which Dr. Banks

23  relies is the sole measure that may be used, and, indeed, as noted, Dr. Banks refers to the

24  measure she employs as an "alternative" measure.  (See id. Ex. 20 at 11.)

25              **c.  Conclusion: Disparate Impact Claims**

26      Accordingly, for all the reasons discussed above, a triable issue of fact exists as to

27  disparate impact.

28  //

1

### 3.  Intentional Discrimination:  All Plaintiffs

2      Each of the First through Fourth Causes of Action, in which plaintiffs allege,

3  respectively, violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII and FEHA, includes

4  a claim that plaintiffs were subjected to intentional discrimination on the basis of race and

5  color when they did not receive a promotion to the position of H-50 Assistant Chief.

6      Under the burden-shifting procedure set forth in McDonnell Douglas Corp. v. Green,

7  411 U.S. 792, 802 (1973), where, as here, a plaintiff does not offer direct evidence of racial

8  animus, a plaintiff may establish a prima facie case by showing "(1) [he] belongs to a

9  protected class; (2) [he] applied for and was qualified for the position [he] was denied;

10  (3) [he] was rejected despite [his] qualifications; and (4) the employer filled the position with

11  an employee not of plaintiff's class, or continued to consider other applicants whose

12  qualifications were comparable to plaintiff's after rejecting plaintiff."  See Dominguez-Curry

13  v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).[17]  If the plaintiff establishes

14  a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for its

15  decision, and, if the employer does so, the plaintiff is required to offer evidence to support a

16  finding that the proffered reason is pretextual.  See id.

17      Here, the City has proffered a legitimate, non-discriminatory reason for its decisions

18  to promote individuals other than plaintiffs to the subject H-50 Assistant Chief positions.[18]

19  Specifically, according to Chief Hayes-White, who made the challenged decisions, she

20  filled the open positions by following Civil Service Rules that required her to fill the positions

21  using only the H-50 eligible list and, in using the list, she selected persons in "rank order,"

22  which procedure is allowed, although not required, under the Civil Service Rules.  (See

23  Hayes-White Decl. ¶¶ 14, 16, 17-18, 20, 22.)

24  ───────────────

25      [17]Although McDonnell Douglas involved a Title VII claim, the "McDonnell Douglas
framework is fully applicable" to discrimination claims brought under § 1981, see Surrell v.
26  California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008), under § 1983, see St.
Mary's Honor Center v. Hicks, 509 U.S. 502, 506 n.1 (1993), and under FEHA, see Guz, 24
27  Cal. 4th at 354.

28      [18]Although the City also contends plaintiffs cannot establish a prima facie case, the
City fails to identify any element thereof as to which plaintiffs lack evidence.

1    As the City has proffered a legitimate, non-discriminatory reason, the burden shifts

2    to plaintiffs to "show pretext either (1) by showing that unlawful discrimination more likely

3    motivated the employer, or (2) by showing that the employer's proffered explanation is

4    unworthy of credence because it is inconsistent or otherwise not believable."  See

5    Dominguez-Curry, 424 F.3d at 1037.  In that regard, plaintiffs do not argue that Chief

6    Hayes-White failed to follow the Civil Service Rules when filling the subject positions.

7    Rather, plaintiffs argue that because the test had a disparate impact on African-Americans,

8    the City should not have used the eligible list all, i.e., that the City should have discarded

9    the results of the examination.

10    As discussed above, plaintiffs have, for purposes of their disparate impact claims,

11    established a triable issue of fact.  The existence of such triable issue, however, does not

12    suffice to support a finding of pretext for purposes of an intentional discrimination claim, as

13    "courts only require that an employer honestly believe[ ] its reason for its actions, even if its

14    reason is foolish or trivial or even baseless."  See Villiarimo v. Aloha Island Air, Inc., 281

15    F.3d 1054, 1063 (9th Cir. 2002) (internal quotation and citation omitted).  Here, plaintiffs

16    point to no evidence that the City, and, in particular, Chief Hayes-White, did not "honestly

17    believe" she was acting in accordance with proper Civil Service procedure and that the

18    most qualified individual for a position is the highest scoring applicant, absent some

19    countervailing attribute, such as a disciplinary record.  (See Hayes-White Decl. ¶¶ 16, 20);

20    Villiarimo, 281 F.3d at 1063 (holding, where employer stated it terminated plaintiff based on

21    its determination she had violated workplace rule, plaintiff's evidence that she had not

22    violated rule was insufficient to create triable issue as to pretext, as plaintiff "presented no

23    evidence that [employer] did not honestly believe its proffered reasons").

24    Accordingly, the City is entitled to summary judgment on plaintiffs' intentional

25    discrimination claims to the extent such claims are based on plaintiffs' not having received

26    promotions to the position of H-50 Assistant Chief.

27    //

28    **4.  Retaliation:  Stevenson, Taylor and Smith**

17

1    Each of the Ninth through Twelfth Causes of Action, in which plaintiffs allege,

2 respectively, violations of § 1981, § 1983, Title VII and FEHA, includes a claim that the City,

3 when it did not promote Stevenson, Taylor and Smith to an H-50 Assistant Chief position,

4 did so in retaliation for those plaintiffs' having engaged in protected activity.

5    To establish a prima facie case of retaliation, "a plaintiff must prove (1) [he] engaged

6 in a protected activity; (2) [he] suffered an adverse employment action; and (3) there was a

7 causal connection between the two."  See Surrell, 518 F. 3d at 1108.  "Once established,

8 the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its

9 actions; at that point, the plaintiff must produce evidence to show that the stated reasons

10 were a pretext for retaliation."  Id.

11    Here, assuming, arguendo, plaintiffs can establish a prima facie case of retaliation,

12 the City, as discussed above with respect to plaintiffs' intentional discrimination claims, has

13 offered a legitimate, non-retaliatory reason for its decisions to promote persons other than

14 plaintiffs to H-50 Assistant Chief positions, and plaintiffs have not shown such decisions

15 were pretextual in nature.

16    Accordingly, the City is entitled to summary judgment on plaintiffs' retaliation claims

17 to the extent such claims are based on plaintiffs' not having received promotions to the

18 position of H-50 Assistant Chief.

19    **5. Failure to Prevent Discrimination:  All Plaintiffs**

20    In the Fifth through Eighth Causes of Action, in which plaintiffs allege, respectively,

21 violations of § 1981, § 1983, Title VII and FEHA, plaintiffs assert the City failed to protect

22 them from discrimination.  Specifically, plaintiffs allege that after they "received their H-50

23 examination results, [p]laintiffs complained to the [Fire] Department management in various

24 formal and informal fashions" (see FAC ¶¶ 159, 164, 171, 176), and that the City thereafter

25 "failed to take the reasonable steps necessary to prevent discrimination from occurring with

26 respect to [p]laintiffs" (see FAC ¶ 160, 165, 172, 177).

27 //

28    **a.  Fifth through Seventh Causes of Action**

18

1    The City acknowledges that under FEHA, an employer can be held liable for "fail[ing]

2    to take all reasonable steps necessary to prevent discrimination . . . from occurring."  See

3    Cal. Gov't Code § 12940(k).  The City argues, however, that it is entitled to summary

4    judgment to the extent plaintiffs seek relief under § 1981, § 1983, and Title VII for a failure

5    to prevent discrimination, i.e., the Fifth through Seventh Causes of Action, for the reason

6    that no court has recognized such a claim exists under those statutes.

7    In their opposition, plaintiffs concede that a "failure to prevent discrimination, absent

8    a harassment claim, is not recognized under Title VII."  (See Pls.' Opp. at 6:2-27.)[19]  With

9    respect to § 1981 and § 1983, however, plaintiffs argue that two district courts, specifically,

10   in Douglas v. Brookville Area School Dist., 836 F. Supp. 2d 329 (W.D. Pa,2011) and Doe v.

11   Perry Community School Dist., 316 F. Supp. 2d 809 (S.D. Iowa 2004), have recognized

12   claims for failure to prevent discrimination, and that this Court likewise should find such

13   claims cognizable.  As set forth below, plaintiffs' reliance on Douglas and Lee is misplaced,

14   as both cases are markedly distinguishable on their facts.

15   First, contrary to plaintiffs' argument, neither case considered a claim under § 1981,

16   and, consequently, plaintiffs fail to offer any authority recognizing, independent of a claim

17   for employment discrimination thereunder, a separate claim for relief based on a failure to

18   prevent such discrimination.  Next, as explained in Douglas, "[a] plaintiff cannot prevail in

19   an action brought under § 1983 without establishing an underlying violation of a federal

20   constitutional or statutory right."  See Douglas, 836 F. Supp. 2d at 349 (citing City of

21   Rancho Palos Verdes v. Abrams, 544 U.S. 113, 119-20 (2005)).  Douglas involved an

22   alleged statutory rape of a student by a teacher, and the court found such allegations, if

23   supported by sufficient evidence, could support a claim based on a substantive violation of

24   the Due Process Clause.  See id. at 349-65.  Doe involved alleged harassment by other

25   students on the basis of sexual orientation, and the court found such allegations could, if

26   supported by the requisite evidentiary showing, support a claim based on a violation of the

27

28          [19]Plaintiffs do not allege a harassment claim.

19

1   student's rights under the First Amendment and Equal Protection Clause.  See Doe, 316 F.

2   Supp. 2d at 822, 828.

3        Here, by contrast, plaintiffs do not identify, either in the FAC or their opposition, any

4   federal authority requiring an employer to prevent discrimination with respect to

5   employment decisions such as promotions, independent of an employer's obligation not to

6   engage in such discrimination itself.  In other words, plaintiffs cannot base a separate

7   § 1983 claim on the City's failure to prevent itself from engaging in discrimination.

8        Accordingly, the City is entitled to summary judgment on the Fifth, Sixth and Seventh

9   Causes of Action.

10              **b. Eighth Cause of Action**

11              **(1) Timeliness:  Lee**

12        To the extent the Eighth Cause of Action, in which plaintiffs allege a failure to

13   prevent discrimination in violation of FEHA, is brought on behalf of Lee, the City argues it is

14   entitled to summary judgment, on the asserted ground such claim is time-barred.  As

15   discussed above with respect to the Third and Fourth Causes of Action, however, the Court

16   finds the City has failed to show Lee's FEHA claims are time-barred.

17              **(2) Merits: All Plaintiffs**

18        Although the City seeks summary judgment on all claims as brought by all plaintiffs,

19   the City appears to acknowledge that plaintiffs, other than Lee, can proceed on their Eighth

20   Cause of Action.  (See Defs.' Mot. at 13:2-6 (citing "Cal. Gov't Code Sec 12940(k);

21   California Civil Jury Instructions 2527; Trujillo v. North County Transit Dist., 63 Cal. App.

22   4th 280, 286 (1998)").)

23        Accordingly, the City has failed to show it is entitled to summary judgment on the

24   Eighth Cause of Action.

25   **B. Constructive Discharge:  Stevenson and Lee**

26        In the Thirteenth through Sixteenth Causes of Action, in which plaintiffs assert

27   violations of § 1981, § 1983, Title VII and FEHA, respectively, plaintiffs allege the City

28   "deliberately created working conditions that were designed to make [Stevenson and Lee]

1    feel compelled to resign and due to such compulsion [they] resigned," and that "race was a

2    motivating factor."  (See FAC ¶¶ 195, 200, 206, 212.)

3        The City argues it is entitled to summary judgment on the ground plaintiffs cannot

4    establish that either Stevenson or Lee resigned due to intolerable working conditions.

5         "Under the constructive discharge doctrine, an employee's reasonable decision to

6    resign because of unendurable working conditions is assimilated to a formal discharge for

7    remedial purposes."  Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004).  The

8    conditions must be "sufficiently extraordinary and egregious to overcome the normal

9    motivation of a competent, diligent, and reasonable employee to remain on the job to earn

10   a livelihood and to serve his or her employer."  See Poland v. Chertoff, 494 F.3d 1174,

11   1184 (9th Cir. 2007) (internal quotation and citation omitted).  "[A] demotion, even when

12   accompanied by a reduction in pay, does not by itself trigger a constructive discharge."

13   King v. AC & R Advertising, 65 F.3d 764, 768 (9th Cir. 1995) (internal quotation and citation

14   omitted).

15       Here, as set forth above, it is undisputed that after the H-50 Assistant Chief eligible

16   list was posted, Chief Hayes-White announced that "effective January 21, 2011, H-50

17   provisional and acting assignments [would] be rescinded."  (See Hayes-White Decl. Ex. E.)

18   It is also undisputed that, as a result, Stevenson and Lee would have had to return to the

19   last position each held on a permanent basis, the H-40 Battalion Chief position (see id.

20   ¶ 18), and that, after hearing such announcement, both Stevenson and Lee resigned (see

21   Rolnick Decl. Ex. 6 at 58:2-4, Ex. 8 at 217:20-24.)  In addition, the City has submitted

22   deposition testimony by Stevenson and Lee to establish that each such plaintiff resigned,

23   not because of intolerable working conditions, but because each did not wish to work as an

24   H-40 Battalion Chief and, instead, chose to retire in order to obtain a pension based on the

25   salary each had earned as an H-50 Assistant Chief.  In particular, Stevenson testified he

26   retired rather than be "demoted back to battalion chief" (see id. Ex. 6 at 58:2-17), and that

27   doing so allowed him to receive a pension based on his salary as an H-50 Assistant Chief

28   (see id. Ex. 6 at 63:10-16); Lee likewise testified that he did not wish to go "back to

21

battalion chief" (see id. Ex. 8 at 217:20-24, Ex. 9 at 234:12 - 235:19), and, instead, decided to "retire at an assistant's chief's pay" (see id. Ex. 9 at 236:5-18).  Plaintiffs, in their opposition, cite no evidence to the contrary, i.e., evidence to support a finding that Stevenson and/or Lee retired due to "unendurable working conditions."  See Suders, 542 U.S. at 141.[20]

Accordingly, as a demotion, even where accompanied by a reduction in pay, does not by itself trigger a constructive discharge, see King, 65 F.3d at 768, the City is entitled to summary judgment on the Thirteenth through Sixteenth Causes of Action.

## C. Thirty-Day Suspension:  Stevenson

Plaintiffs allege the City wrongfully suspended Stevenson for a period of thirty days, following a finding that Stevenson, while serving on the "Scoring Key Development Committee" (""Committee"), which developed the answer key for the civil service examination for the position of H-30 Captain, had violated confidentiality rules.  (See FAC ¶¶ 72-73, 77-78, 84, 88-89.)  Although the theory under which plaintiffs seek relief for such suspension is not clearly expressed in the FAC, the Court construes the FAC as alleging the imposition of such suspension constituted intentional discrimination of the basis of race and retaliation, in violation of § 1981, § 1983, Title VII and FEHA.[21]

The City argues, inter alia, that it is entitled to summary judgment for the reason it has proffered a legitimate, non-discriminatory and non-retaliatory reason for the suspension.  In support thereof, the City relies on Chief Hayes-White's declaration, in which she states that, after she received a "complaint" from another member of the Committee "regarding an alleged breach of confidentiality by Stevenson," she requested the matter be investigated (see Hayes-White Decl. ¶ 23), and that, thereafter, she received from Shawn

---

[20]In their opposition, plaintiffs argue that Stevenson and Lee were "concerned, if not certain, they could not perform the duties of a battalion chief, which requires jumping into the fray of battling a blaze."  (See Pls.' Opp. at 34:23-25.)  Even assuming, arguendo, such regular duties could be considered unendurable working conditions, however, plaintiffs cite no evidence to support such assertion.

[21]In their surreply, plaintiffs confirm that they base their municipal liability claims, i.e., their claims under § 1981 and § 1983, in part on Stevenson's suspension.

1   Kelly, a "Senior Investigator" with the City Attorney's Office, a report finding Stevenson, in

2   violation of a confidentiality agreement he had signed, had discussed an answer on the

3   scoring key with a member of the Fire Department who was not on the Committee.  (See

4   id. ¶ 24, Ex. F.)  Chief Hayes-White further avers that, in response to the report, she

5   charged Stevenson with violating a workplace rule prohibiting the dissemination of

6   examination questions (see id. ¶ 25, Ex. G), and, on October 11, 2007, the Fire

7   Commission found Stevenson guilty of the charge and imposed the suspension as

8   punishment therefor (see id. Ex. H).

9        The Court finds the reason on which the City relies is non-discriminatory and non-

10  retaliatory.  Consequently, as discussed above, the burden shifts to plaintiffs to offer

11  evidence to support a finding that the City's stated reason is pretextual in nature.

12       In an effort to meet that burden, plaintiffs, referencing the content of the

13  investigator's report, note that Johnson "testified that Stevenson's actions had no effect [on]

14  the examination results, as all candidates had completed the examination at the time of

15  Stevenson's action" and that the investigator "found no damaging effect from Stevenson's

16  actions."  (See Pls.' Opp. at 32:12-14.)  Plaintiffs offer no evidence, however, to show that

17  Stevenson did not breach his duty of confidentiality in violation of Fire Department rules.

18  To the extent plaintiffs may be arguing that the Fire Commission should not have

19  suspended Stevenson for a breach of confidentiality that did not affect the outcome of the

20  examination, such argument is unavailing. The issue before the Court is not the wisdom of

21  the Fire Commission's decision, but, rather, whether there exists evidence to support a

22  finding that the Fire Commission's decision to suspend Stevenson was motivated by race

23  or was in retaliation for protected activity, rather than because Stevenson had violated a

24  workplace rule.  See Hernandez v. Spacelabs Medical Inc., 343 F.3d 1107, 1115 (9th Cir.

25  2003) (holding courts "are not concerned with the correctness or wisdom of the reason

26  given for the adverse employment decision, but only with whether the proffered reason was

27  the real reason for [the adverse employment act] and not a pretext for retaliation") (internal

28  quotation, alterations, and citation omitted); Guz, 24 Cal. 4th at 358 (holding employer's

1    reason for adverse employment act "need not necessarily have been wise or correct").

2         Accordingly, the City is entitled to summary judgment on plaintiffs' claims to the

3    extent such claims are based on Stevenson's 2007 suspension.

4    **D.  Failure to Promote to Assistant Deputy Chief–Department of Training:  Taylor**

5         Plaintiffs allege that, in 2011, the City wrongfully failed to promote Taylor to the

6    position of "Assistant Deputy Chief–Department of Training."  (See FAC ¶¶ 108-110.)  The

7    Court construes the FAC as alleging such failure to promote constituted intentional

8    discrimination of the basis of race and retaliation in violation of Title VII and FEHA.[22]

9         The City argues it is entitled to summary judgment, relying on the above-referenced

10   declaration by Chief Hayes-White.  Specifically, Chief Hayes-White avers therein that, in

11   September 2011, she sought candidates for the subject position, that twelve persons

12   including Taylor applied, and that she selected applicant Battalion Chief Jose Velo

13   "because of the breath and depth of his relevant training and certifications obtained outside

14   of the Fire Department" and because "he had previously worked as Training Captain at the

15   Division of Training for several years."  (See Hayes-White Decl. ¶ 27.)

16        The Court finds the reasons stated by Chief Hayes-White are legitimate, non-

17   discriminatory, and non-retaliatory.  Consequently, as discussed above, to create a triable

18   issue of fact, plaintiffs are required to submit evidence to support a finding that the stated

19   reasons are pretextual in nature.  Plaintiffs, however, fail to address the claim in their

20   opposition, nor has the Court otherwise been pointed to any evidence in support thereof.

21   Under such circumstances, plaintiffs have not shown a triable issue of fact exists.

22        Accordingly, the City is entitled to summary judgment on plaintiffs' claims to the

23

24       [22]The City correctly observes that because each named defendant herein is a
     municipal agency, plaintiffs can only succeed under § 1981 and § 1983 by showing that

25   any violation of said statutes committed by a City employee was "caused by a custom or
     policy within the meaning of Monell."  See Jett v. Dallas Independent School Dist., 491 U.S.

26   701, 735-36 (1989) (citing Monell v. New York City Dep't of Social Services, 436 U.S. 658
     (1978)).  In their surreply, plaintiffs confirm that they are not basing their municipal liability

27   claims on Taylor's failure to be promoted to Assistant Deputy Chief–Department of
     Training, nor on any of the other alleged adverse employment acts discussed below.  (See

28   Pls.' Surreply at 2:22 - 3:21.)

extent such claims are based on Taylor's failure to receive a promotion to the position of Assistant Deputy Chief–Department of Training.

**E. Investigation Into Use of Sick Leave:  Taylor**

Plaintiffs allege that the City, in 2011, wrongfully investigated Taylor for his "use of [a] sick day on February 25, 2011" (see FAC ¶ 117), which investigation culminated in a finding by Chief Hayes-White that Taylor had not violated any rule (see FAC ¶ 119).  The Court construes the FAC as alleging said investigation constituted intentional discrimination of the basis of race and retaliation in violation of Title VII and FEHA.

The City argues it is entitled to summary judgment, for the reason that the conduct challenged in the FAC is not an adverse employment action.  The Court agrees. Specifically, where an employer conducts an investigation into possible workplace misconduct and no penalty thereafter is imposed, such investigation does not constitute an adverse employment action.  See Quantz v. Edwards, 2006 WL 1277093, at *1, 6-7 (W.D. Wash. May 5, 2006) (holding, where no penalty imposed, employer's internal investigation into "discrepancies on [plaintiff's] employment application" did not constitute "adverse employment action"), aff'd in relevant part, 264 Fed. Appx. 625, 627 (9th Cir. 2008).

Accordingly, the City is entitled to summary judgment on plaintiffs' claims to the extent such claims are based on the 2011 investigation into Taylor's use of sick leave.

**F. Other Allegedly Adverse Employment Acts:  Smith**

Plaintiffs allege the City subjected Smith to the following nine assertedly wrongful actions, the first of which occurred in 2004 and the last of which occurred in December 2010:  (1) in 2004, the City's failure to promote Smith to the position of H-40 Battalion Chief (see FAC ¶ 123); (2) in 2005, the City's investigation into whether Smith engaged in "rude behavior towards an elementary school principal during a fire drill," and ultimate decision not to impose "discipline" (see FAC ¶ 124); (3) after a hearing conducted in 2005, the City's imposition of a four-day suspension for "failure to wear an air pack into a building under investigation with a hazardous environment," despite Smith's denial that he entered the

building (see FAC ¶ 125);[23] (4) in 2006, the City's investigation into whether Smith failed to attend a "training course," and ultimate "exonerat[ion]" of Smith as to the charge (see FAC ¶ 126); (5) in 2007, Smith receipt of "counsel[ing]" for "completing his own injury report form" (see FAC ¶ 127); (6) in 2007, the City's failure to promote Smith to the position of H-30 Captain (see FAC ¶ 128); (7) on July 19, 2008, the City's denial of Smith's "request to work in Division III" (see FAC ¶ 129); (8) in "approximately" March 2009, Assistant Chief Kenney's "investigat[ion] and reprimand[ ]" of Smith, after Smith, allegedly acting in conformity with a "customary practice," directed a captain to "move her personal vehicle" from a parking space Smith wished to use (see FAC ¶ 131);[24] and (9) in December 2010, Smith's receipt of "negative comments in his annual performance appraisal without his knowledge or being informed that those problems existed," and the evaluator's subsequent "refus[al] to meet with him" (see FAC ¶ 130).  The Court construes the FAC as alleging said acts constituted intentional discrimination of the basis of race and retaliation in violation of Title VII and FEHA.

The City argues that plaintiffs' claims, to the extent based on the above-referenced actions, are barred by the applicable statutes of limitations.  The Court agrees.

As discussed above, a Title VII claim is barred unless the plaintiff submits a charge within 300 days of the assertedly wrongful act, and a FEHA claim is barred unless the plaintiff submits a charge within 365 days of said act.  Smith first raised said claims in a charge he submitted to the EEOC and DFEH on February 22, 2012 (see Randle Decl. Ex. N, Tab 5 at 5, 9-10), a date more than one year after the latest of the above-identified

---

[23]Although plaintiffs, in the FAC, do not allege the date on which the suspension was imposed, Smith, in his administrative charge submitted to the EEOC, stated he unsuccessfully "appealed" the suspension to the Fire Commission in January 2007.  (See Randle Decl. Ex. N, Tab 5 at 10.)  Consequently, the imposition must have occurred sometime between the 2005 hearing and the January 2007 denial of Smith's appeal.

[24]Although the FAC does not state the date on which said incident occurred, Smith provided the month and year in his administrative charge.  (See Randle Decl. Ex. N, Tab 5 at 11.)

1   acts.[25]

2        Accordingly, the City is entitled to summary judgment on plaintiffs' claims to the

3   extent such claims are based on the above-identified nine acts involving Smith.

4   **CONCLUSION**

5        For the reasons stated above, the City's motion for summary judgment is hereby

6   GRANTED in part and DENIED in part.  Specifically, with the exception of (1) the disparate

7   impact claims in the Third and Fourth Causes of Action, and (2) the Eighth Cause of Action,

8   the City is entitled to summary judgment and its motion is hereby GRANTED.  With respect

9   to (1) the disparate impact claims in the Third and Fourth Causes of Action, and (2) the

10   Eighth Cause of Action, the motion is hereby DENIED.

11   **IT IS SO ORDERED.**

12

13   Dated:  January 5, 2016

14   MAXINE M. CHESNEY
    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26       [25]In their sur-reply, plaintiffs point out that a § 1981 claim, if based on certain of the

27   above-identified acts, would not be barred, given that a four-year statute of limitations applies to claims under § 1981.  In that same filing, however, plaintiffs clarify they do not

28   base their municipal liability claims, including their claims under § 1981, on any of the above-identified acts.